# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

METSO MINERALS INDUSTRIES, INC.,

        Plaintiff,

v.                                                      Case No. 07-CV-926

FLSMIDTH-EXCEL LLC,
EXCEL FOUNDRY & MACHINE, INC.,
JOSEPH P. MARTINEZ,
CHERYL A. SULLIVAN,
RICHARD A. PARSONS,
DOUGLAS M. PARSONS,
KENNETH L. OLSON, and
CHRISTOPHER P. WADE,

        Defendants.

_____

# ORDER

On October 17, 2007, plaintiff Metso Minerals Industries, Inc. ("Metso") filed suit against FLSmidth-Excel LLC ("Excel"). In the ensuing years, Metso filed several amended complaints, adding numerous new defendants. In Metso's fifth, and final, amended complaint, it alleged that all of the defendants (excluding Cheryl Sullivan) partook in misappropriation of certain trade secrets from Metso. Defendants[1] have moved for summary judgment as to Metso's trade secret misappropriation claims arguing that the existence of a patent on the invention to which those trade secrets relate demonstrates that they do not qualify as trade secrets. After consideration of the relevant facts, together with the parties' arguments, the court concludes that

---

[1] In this Order, the court will use the term "defendants" to refer to all the defendants in this case, excluding Cheryl Sullivan.

there is no reasonable basis for granting defendants' motion for summary judgment on Metso's trade secret misappropriation claim.

## BACKGROUND

Metso is engaged in the manufacture and sale of high performance conical rock crushers. Several of those crushers embody claims covered by U.S. Patent No. 4,750,681 ("the '681 patent").[2] Excel is also engaged in the manufacture and sale of high performance conical rock crushers. Excel Foundry & Machine, Inc. ("Foundry") is a company that makes spare parts for many different types of crushers, including the crushers at issue in this case. Foundry was involved in founding Excel and assisted Excel in the research and design of some of Excel's crushers.

Metso contends that three of the individual defendants, Messrs. Wade, Martinez, and Olson, misappropriated some of Metso's trade secrets. Martinez and Olson were previously employed by Metso, and Wade was previously employed by one of Metso's authorized repair facilities; all three are currently employed by Excel. Metso also maintains that Richard Parsons and Douglas Parsons, both high ranking officers in both Foundry and Excel, knew of (or had reason to know of) and actively encouraged such acquisition of Metso's trade-secret information. According to Metso, defendants used the trade-secret information to design and build several of Excel's conical crushers.

---

[2] The '681 patent expired on February 24, 2006; however, defendants are alleged to have infringed the patent before it expired.

-2-

Case 2:07-cv-00926-JPS   Filed 05/13/10   Page 2 of 12   Document 382

## ANALYSIS

### I. Summary Judgment Standard

Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 317. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson*, 477 U.S. at 255.

### II. Trade Secret Misappropriation

Defendants are alleged to have misappropriated combination trade secrets in the form of: 1) general assembly, master layout CAD[3] files; 2) detailed design drawings; and 3) check dimension technical data sheets ("TD sheets"). The type of information contained in these documents is best described as dimensions and

---

[3] The term "CAD" stands for computer aided design.

tolerances.[4] These measurements are part and parcel of the specifications to which Metso builds its conical crushers based on the '681 patent. Defendants argue that because these specifications are necessary to practicing the '681 patent, they cannot also be claimed as trade secrets.

According to Wis. Stat. § 134.90(c), a trade secret is: "information, including a formula pattern compilation, program, device, method, technique or process to which all of the following apply:"

> 1. The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> 2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

Wis. Stat. § 134.90(c)(1)&(2). Defendants, however, do not present any evidence that Metso's claimed trade secrets do not derive independent economic value from being not generally known or readily ascertainable by proper means. Nor do defendants present any evidence that Metso has not sought to maintain the secrecy of its trade secrets through efforts reasonable under the circumstances. Rather, defendants support their motion for summary judgment on Metso's trade secret claims utilizing legal arguments based on a series of assumptions, some of which could be true, but are not necessarily true, and others which simply are not true.

---

[4] "The CAD files are electronic files created by using engineering software that creates dimensionally accurate visual models. The design drawings at issue are detailed design drawings for specific components containing dimensions, tolerances and part-specific instructions. The check dimension TD sheets are summaries of the key dimensions and tolerances of critical components of a crusher and are used to inspect a part to determine whether it is functional." (Joint Ex. 11 [Dkt #239] Fourth Amended Response, No. 12).

-4-

Defendants begin by pointing out that for a patent to be issued, the patentee must disclose sufficient information to "enable" a person of ordinary skill in the relevant art to make and use the claimed invention. 35 U.S.C. § 112. Likewise, defendants suggest out that if a patentee has, prior to applying for a patent, formed a subjective belief as to the "best mode" by which to practice the patent, then in order for the patent to issue, he must disclose that best mode in his patent application. 35 U.S.C. § 112. Defendants next point to the fact that Metso did not disclose any of the claimed trade-secret dimensions and tolerances in the application for the '681 patent. Defendants argue that the claimed trade-secret dimensions and tolerances are necessary to meet the "enablement" and "best mode" requirements. Defendants thus deduce that since the claimed trade secrets are necessary to meet the "enablement" and "best mode" requirements, and since a valid patent cannot issue if the "enablement" and "best mode" requirements are not met, and since the U.S. Patent and Trademark Office ("USPTO") did issue the '681 patent, and since Metso claims that the '681 patent is valid, then the only logical conclusion is that the claimed trade-secret dimensions and tolerances were either known or readily ascertainable at the time the patent issued. Defendants maintain that if the trade-secret dimensions and tolerances were not known at the time or readily ascertainable, then the "enablement" and "best mode" requirements would not have been met, and the USPTO would not have issued the patent.

Defendants' argument contains many assumptions. The first assumption is that the fact that the USPTO issued the patent means that the "enablement" and

"best mode" requirements are met. Defendants' argument hinges on the notion that the only way the patent office could issue the patent is if it determined that the "enablement" and "best mode" requirements were met as a result of the undisclosed dimensions and tolerances being generally known or readily ascertainable. (*See* Defs. Br. Supp. Mot. S.J. [Dkt. #283] at 24) ("[T]he Patent Office must have believed that one of ordinary skill in the art, using the general teachings of the '681 patent, publicly available materials such as texts and treatises, and his or her knowledge of the art, could arrive at suitable proportions, dimensions, and tolerances to make and use a cone crusher having the disclosed characteristics of the claimed inventions."). This argument fails to appreciate that it is not at all uncommon for the patent office to issue patents that do not meet the "enablement" or "best mode" requirement. Indeed, district courts and appellate courts often declare patents to be invalid for failure to meet either the "enablement" or "best mode" requirements. Defendants' argument must fail at the summary judgment stage if it is even possible that the '681 patent is invalid for failure to meet these requirements.[5] Thus, to prevail on their motion for summary judgment, defendants would have to prove a great many things, one of which is that the '681 patent was validly issued. The sole evidence offered

---

[5] Defendants may well take exception to the court's analysis, and instead argue that if the claimed trade-secret dimensions and tolerances should have been disclosed as part of the patent application, then not only should the patent be invalidated, but Metso should also be stripped of trade-secret protection as to the information that should have been disclosed. However, defendants have not actually argued this, and the only case the court is aware of which would support such a notion is the district court's opinion in *Christianson v. Colt*, 609 F. Supp. 1174 (D.C. Ill. 1985), which was vacated in relevant part by the Seventh Circuit in *Christianson v. Colt*, 870 F.2d 1292 (7th Cir. 1989) (finding that Colt's failure to disclose certain trade-secret dimensions and tolerances did not violate the "enablement" or the "best mode" requirements, and vacating district court's determination that Colt was not entitled to trade-secret protection since such determination was based solely on district court's finding that such trade-secrets should have been disclosed in patent application).

in support of this proposition is that Metso, the owner of the '681 patent, maintains that it was validly issued. This evidence is clearly insufficient to prove that the '681 patent was validly issued.

**A.    Enablement**

The next assumption defendants make is that the claimed trade-secret dimensions and tolerances are necessary for the patent to meet the "enablement" requirement. "A patent is enabling when the disclosures made in the patent application are sufficient to allow a person skilled in the art to make and use the claimed invention." *Christianson v. Colt*, 870 F.2d 1292, 1299 (7th Cir. 1989). Part of this requirement is that such a person must be able to make and use the invention without "undue experimentation." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

In determining whether the amount of experimentation required to practice the invention is "undue" (thus rendering the patent invalid for failure to meet the "enablement" requirement), the court should consider the various factors identified by the Federal Circuit in *In Re Wands*, 858 F.2d at 737. The *Wands* factors – which are illustrative, not mandatory, the ultimate determination depending on the relevant facts – are as follows:

> (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.

*Id.*

Defendants, however, in their motion for summary judgment do not proffer sufficient evidence as to these factors or others that would justify a determination by this court that one with ordinary skill in the art could not practice the '681 invention without "undue experimentation" as a result of Metso's failure to disclose its trade-secret dimensions and tolerances. If the court cannot conclude that one with ordinary skill in the art cannot practice the '681 invention without undue experimentation unless they have knowledge of Metso's claimed trade-secret dimensions and tolerances, then much of defendants' argument is eviscerated. For without making such a determination, the court cannot make the deduction, proffered by defendants, that since such dimensions and tolerances are required to enable the patent, and since the patent was issued, then such dimensions and tolerances must have been generally known or readily ascertainable by one with ordinary skill in the art at the time of the application.

However, even if defendants were able to convince the court that knowledge of Metso's trade-secret dimensions and tolerances is necessary to practice the '681 patent, even that would not have established defendants' proffered deduction, owing to the difference in the standards for patent law and trade secret protection. To qualify as a trade secret, the applicable standard, in relevant part, requires that Metso's information be "not generally known" and not "readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Wis. Stat. § 134.90(c). To satisfy the enablement requirement (if knowledge of Metso's trade-secret dimensions and tolerances are necessary to

satisfy that requirement) one of ordinary skill in the art must be able to determine such dimensions and tolerances without "undue experimentation." For defendants to prevail under this line of reasoning, the court would have to hold that if Metso's dimensions and tolerances are able to be determined without "undue experimentation" then they must be "readily ascertainable." However, given the difference in the two standards, the court has no basis for making such a finding. For example, in *U.S. v. Telectronics, Inc.*, 658 F. Supp. 579 (D. Colo. 1987) a district court found that a patent that one would not be able to practice without first undertaking experimentation costing between $40,000 and $50,000 and taking between 6 - 12 months was not enabled because such level of experimentation was "undue." *Id.* at 589. The Federal Circuit Court of Appeals reversed the district court, holding that the above factual scenario did not evidence "undue experimentation." In contrast, even defendants' expert stated at his deposition that information that would require such efforts to ascertain would likely not be deemed "readily ascertainable" under Wis. Stat. § 134.90(c). Hence, defendants' argument that if Metso's trade-secret information can be acquired without "undue experimentation" then that information is per se "readily ascertainable" is simply unavailing.

**B.    Best Mode**

Defendants' arguments regarding "best mode" are equally unavailing. If a patent applicant develops a specific instrumentality or technique which is recognized at the time of filing as the best mode of carrying out the invention, then the best mode requirement imposes an obligation to disclose that information in the patent

-9-

application. *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1532 (Fed. Cir. 1987). Defendants' "best mode" argument parrots their "enablement" argument. They maintain that since the '681 patent applicant was required to disclose any dimensions and tolerances contemplated as the best mode for practicing the '681 patent, and since no such dimensions or tolerances were disclosed, yet the patent was issued, then the only logical deduction is that such dimensions and tolerances were generally known or readily ascertainable (otherwise the patent could not have issued).

Defendants' "best mode" argument fails for the same reasons their "enablement" argument fails. Additionally, the issue of "best mode" is in part highly subjective. "[D]etermining compliance with the 'best mode' requirement is a two-prong inquiry[;] [f]irst the court must determine whether, at the time the patent application was filed, the inventor possessed a best mode for practicing the claimed invention." *Ajinomoto Co., Inc. v. International Trade Commission*, 597 F.3d 1267, 1273 (Fed. Cir. 2010). If the inventor did have a subjective preference for one mode over all others, then the court must determine whether the inventor "concealed" the preferred mode from the public. *Id.* "The first prong is highly subjective; it focuses on the inventor's own personal preferences as of the application's filing date." *Id.* The only actual evidence (as opposed to legal argument) that defendants proffer in reference to the *factual* question posed by the first prong of the "best mode" test is the fact that: "Metso developed a set of dimensions and tolerances for its MP1000 crusher, the machine through which the '681 technology was developed, many

-10-

months prior to filing the '681 patent application." (Defs. Br. Supp. Mot. S.J. [Dkt. #283] at 28). However, as the moving party, defendants offer no evidence regarding whether the dimensions and tolerances employed in that prototype MP1000 constituted the inventor's subjective preferred method, or even whether the dimensions and tolerances employed in that prototype are the same dimensions and tolerances used in the present MP1000 commercial embodiment of the '681 patent. Hence, defendants once again have failed to carry their burden of proof regarding whether the inventor of the '681 patent even had a subjective preference thus triggering a "best mode" analysis. Of course, even if he did have such a subjective preference, this would actually only bolster defendants' "best mode" defense to the validity of the '681 patent. It would not, however, justify granting summary judgment as to Metso's trade secret claims.

## CONCLUSION

Defendants, as the moving parties, bear the burden of demonstrating that there are no material facts pertaining to Metso's trade secret misappropriation claims. Their first argument is that the information Metso claims as trade secrets was generally known or readily ascertainable at the time the patent was issued, because that is the only way the patent could have validly issued since that information was not disclosed within the patent application, and it is necessary for one skilled in the art to practice the patent without undue experimentation. Their next argument is that the information Metso claims as trade secrets is readily ascertainable, because it is necessary to practicing the claimed invention, and thus

-11-

it must be ascertainable without "undue experimentation," and, if it is ascertainable without "undue experimentation," then it is "readily ascertainable." Their third argument is that the information Metso claims as trade secrets was generally known or readily ascertainable at the time the patent was issued, because that is the only way the patent could have validly issued since that information was not disclosed within the patent and it embodies the inventor's "best mode" for practicing the patent. Defendants have presented virtually no actual evidence in support of these arguments. Rather, the arguments are essentially little more than logical syllogisms resting on what, at the end of the day, may be best viewed as unwarranted and unproven assumptions.

Accordingly,

**IT IS ORDERED** that defendants' Motion for Partial Summary Judgment Dismissing Metso's Trade Secret Misappropriation Claims (Docket #235) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 13th day of May, 2010

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge